UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:14-CV-143-BO

OPEN GROUNDS FARM, INC., )
　　　　　　　　　　　　　　　　　　　　)
　　　Appellant, )
　　　　　　　　　　　　　　　　　　　　)
v. ) **ORDER**
　　　　　　　　　　　　　　　　　　　　)
JAMES B. ANGELL, Chapter 7 Trustee for )
Tanglewood Farms, Inc. of Elizabeth City, )
　　　　　　　　　　　　　　　　　　　　)
　　　Appellee. )

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

This cause comes before the Court on Open Grounds Farm's appeal of the Bankruptcy Court for the Eastern District of North Carolina's Order of January 5, 2014, granting the trustee's motion for summary judgment against Open Grounds Farm. A hearing was held on this appeal before the undersigned on April 15, 2015, at Raleigh, North Carolina. For the reasons discussed below, the decision of the bankruptcy court is reversed.

## BACKGROUND

Tanglewood Farms, Inc. (Tanglewood or debtor), filed a voluntary petition under Chapter 11 of the Bankruptcy Code in August 2010. James H. Winslow (Winslow) was the sole shareholder and President of Tanglewood; Tanglewood's facilities are located in Pasquotank County, North Carolina. Tanglewood was engaged in the business of buying grain from farmers and selling grain to large companies. The Chapter 11 proceeding was converted to one under Chapter 7 of the Bankruptcy Code in July 2011. James Angell, appellee in the instant action, was appointed Chapter 7 trustee.

Winslow also personally leased land from Open Grounds Farm (Open Grounds or appellant) in Carteret County, North Carolina for his own farming activities to grow corn, wheat, and soybeans. Open Grounds and Winslow entered into two lease agreements which covered the years 2007 and 2008-2009. In accordance with the 2008-09 agreement, the total rent owed by Winslow to Open Grounds was $1,322,706. [DE 7-4 at 28 of 29]. As later modified, the 2009 payment schedule would include a payment of $300,000 by February 5, 2009; $500,000 not later than July 15, 2009; and the balance of $522,706 due not later than September 15, 2009. [DE 7-5 at 1 of 31]. The land rent agreement provided that in the event Winslow defaulted and did not pay his rent by the final installment date, any crops planted would become the property of Open Grounds and Winslow would have no further right, title, or interest in any of the plantings and/or crops. [DE 7-4 at 28 of 29].

On March 4, 2009, Winslow paid $300,000 by personal check for the first installment of rent. [DE 4-1 at 122 of 404]. On August 26, 2009, Open Grounds sent a letter to Winslow notifying him that he was in breach of his agreement by failing to make timely land rental payments. [DE 7-5 at 3 of 31]. On or about August 27, 2009, pursuant to its agreement with Winslow to allow him to pay a rental installment so that he could re-enter the land and harvest crops, Open Grounds received a wire transfer from Winslow in the amount of $300,000. [DE 7-2 at 17 of 39]. The wire transfer was sent by Belvidere Farmers Exchange Inc. c/o Tanglewood Farms. *Id.* This account had been set up by Winslow on August 26, 2009, the same day that Winslow received the default letter from Open Grounds. [DE 4-2 at 1 of 19; DE 7-1, Winslow Dep. at 13-15]. The Belvidere Farmers Exchange account had been set up so that Winslow could hide funds from Meherrin, a supplier and secured creditor of Tanglewood. [DE 7-1, Winslow Dep. at 16-17; 53-59]. Meherrin had begun to require that Tanglewood's customers pay

2

Meherrin directly instead of making grain payments to Tanglewood, and Tanglewood began selling its grain under the name of Belvidere to conceal its grain proceeds from Meherrin. [*Id.*; DE 4-1 at 246-247].

On September 28, 2009, Open Grounds received a second wire transfer from Belvidere Farmers Exchange c/o Tanglewood for $250,000, and this amount was applied to Winslow's rent obligation. [DE 7-2 at 22 of 39; DE 4-1 at 122 of 404]. Open Grounds had also received two wire transfers from Winslow on September 21 and September 23, 2009, for $50,000 each. [DE 4-1 at 122 of 404]. Beginning in October 2009, Open Grounds began receiving checks in varying amounts from J.C. Howard Farms, which it credited toward Winslow's rental agreement. *Id.* These checks were payments for crops grown on Winslow's leased land and purchased by J.C. Howard Farms. The total amount Open Grounds received from J.C. Howard Farms was $372,704.29. *Id.* Winslow and his wife filed a petition under Chapter 11 of the Bankruptcy Code in August 2010.

By order entered June 5, 2014, the bankruptcy court granted the trustee's motion for summary judgment, holding that the wire transfers and J.C. Howard payments constitute property of the debtor which was fraudulently transferred to Open Grounds in satisfaction of an obligation of Winslow, a non-debtor entity. The bankruptcy court further found that no genuine issues of material fact exist as to the good faith defenses claimed by Open Grounds. The instant appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals...from final judgments, orders, and decrees...of bankruptcy judges entered in cases and proceedings referred

3

to the bankruptcy judges under section 157 of this title." A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks omitted). Legal conclusions made by the bankruptcy court are reviewed de novo. *In re White*, 487 F.3d at 204. Mixed questions of law and fact are also reviewed de novo. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003).

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## DISCUSSION

### MOTION TO STRIKE

The Court first considers appellee's motion to strike the reply brief of appellant as it exceeds the page length and cities to material not in the record on appeal. "[I]n reviewing a bankruptcy case on appeal, a district court can consider only that evidence which was presented before the bankruptcy court and made a part of the record." *In re Bartlett*, 92 B.R. 142, 143

(E.D.N.C. 1988). Indeed, "[a]ny reference to material not in the agreed record for appeal, much less its inclusion in a brief filed with the Court, "is improper. *United States v. Anderson*, 481 F.2d 685, 702 n.19 (4th Cir. W. Va. 1973) (citing F.R.A.P. 10); *see also Angell v. Echols*, 2011 U.S. Dist. LEXIS 141748, 4 (E.D.N.C. Mar. 14, 2011). Accordingly, the Court has not considered appellant's citations to materials not included in this record on appeal. The Court declines, however, to strike appellant's reply brief in its entirety. *See* Fed.R. Civ. P. 12(f); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (striking a pleading is a drastic remedy).

APPEAL OF ORDER ON SUMMARY JUDGMENT

Open Grounds contends that the bankruptcy court erred in granting the motion for summary judgment against Open Grounds. Specifically, Open Grounds argues that the bankruptcy court erred in concluding that as a matter of law Open Grounds does not meet the subjective and objective standards required to meet the good faith requirements set forth in 11 U.S.C. §§ 548(c) and 550(b)(1); in concluding that there is no genuine issue of material fact in regard to the good faith defense; in concluding as a matter of law that the debtor did not receive reasonably equivalent value in exchange for payments received by Open Grounds; in concluding that there are no genuine issues of material fact as to whether Open Grounds was aware or should have been aware, at the time of the transfers and in accordance with routine business practices, that the debtor intended to hinder, delay, or defraud creditors; and in concluding as a matter of law that no genuine issue of material fact existed, entitling appellee to summary judgment on all claims.

I. Fraudulent Transfers

The bankruptcy court erred in granting summary judgment to the trustee and holding that the transfers are avoidable as actually or constructively fraudulent. 11 U.S.C. section 548(a)(1)(a) provides that the trustee may avoid any transfer of an interest of the debtor in property which was made within two years of the filing of the bankruptcy petition if the debtor, either voluntarily or involuntarily, made the transfer "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted. . .." 11 U.S.C. § 548(a)(1)(B) further provides that a trustee may avoid any transfer of an interest of the debtor in property if the debtor voluntarily or involuntarily

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;

11 U.S.C.A. § 548(a)(1)(B)(i)-(ii). "An essential element in a fraudulent transfer action is that the debtor had an interest in the property transferred." *In re Jackson*, 105 B.R. 15, 16 (Bankr. S.D. Ohio 1989).

As to the finding of actually fraudulent transfers, though Winslow testified that he did in fact open the Belvidere Farmers Exchange account for the purpose of hiding grain proceeds from Meherrin, Winslow also testified that he used money from the Belvidere Farmers Exchange account to pay Meherrin. There is further testimonial evidence by Winslow which reveals that he considered his own operation and Tanglewood's operation as one business enterprise, and the record keeping as between Tanglewood and Winslow's personal enterprise demonstrates as

much. "While each fact does not have to demonstrate actual fraud, the facts taken together must lead to the conclusion that actual fraud existed." *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 483-84 (4th Cir. 1992). The record here simply bears too many inconsistencies to support a finding of actually fraudulent transfers as a matter of law.

Winslow's inconsistent testimony in regard the buying and selling of his corn grown on Open Grounds land during the summer of 2009, as well as the lack of evidence in the record demonstrating that Winslow in fact sold his Open Grounds corn to Tanglewood, further precludes summary judgment on the issue of constructively fraudulent transfers. In order to demonstrate that a transfer was constructively fraudulent, the debtor must have received less than reasonably equivalent value in exchange for the transfer at issue. However, "[a]s long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred." *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d at 484.

The record demonstrates that the corn sold to J.C. Howard Farms came directly from Winslow's leased land at Open Grounds, not from Tanglewood's granary. Winslow testified that the corn sold to J.C. Howard Farms belonged to Tanglewood, but Winslow further testified that he was not paid by Tanglewood for the crops that he grew on Open Grounds' land. If in fact Winslow had sold the corn which was ultimately sold to J.C. Howard to Tanglewood, and Tanglewood did not pay Winslow for the corn, Tanglewood could not have been constructively defrauded when J.C. Howard paid for the corn by writing checks to Open Grounds, and an avoidance of the transfer would unjustly enrich the estate. Alternatively, if Tanglewood did pay Winslow for the corn sold to J.C. Howard, there remains a question of fact as to whether Tanglewood received reasonably equivalent value because Winslow and Tanglewood share, to at

least some extent, an identity of interest, and in such an instance "if the exchange preserves or enhances the debtor's net worth, then the transfer was not fraudulent even if a third party was the intended beneficiary of the transfer." *In re Richards & Conover Steel, Co.*, 267 B.R. 602, 614 n.4 (B.A.P. 8th Cir. 2001).

Taking the facts in evidence in the light most favorable to Open Grounds, the non-moving party, genuine issues of material fact remain as to whether the transfers to Open Grounds were actually or constructively fraudulent and entry of summary judgment was therefore inappropriate.

## II. Good Faith Defense

The bankruptcy court further erred in concluding as a matter of law that Open Grounds does not meet the subjective and objective standards required to satisfy the good faith defense set forth in 11 U.S.C. §548(c) and 11 U.S.C. § 550(b)(1). The bankruptcy court held that Open Grounds' statement that it did not notice that the wire transfers came from Belvidere Farmers Exchange and had no reason to question payments received from J.C. Howard Farms "stretches credibility" and "fails to comport with what common sense would demand be the commercially reasonable standard . . .." [DE 1-1 at 12].

> [I]n evaluating whether a transferee has established an affirmative defense under Section 548(c), a court is required to consider whether the transferee actually was aware or should have been aware, at the time of the transfers and in accordance with routine business practices, that the transferor-debtor intended to hinder, delay, or defraud any entity to which the debtor was or became indebted.

*In re Taneja*, 743 F.3d 423, 430 (4th Cir. 2014) (internal quotation, alteration, and citation omitted). This test includes both subjective and objective components. *Id.* Much as Meherrin had directed Tanglewood's grain customers not remit payment to Tanglewood to pay Meherrin directly, it does not stretch credibility or fail to comport with a commercially reasonable standard

that, in the context of growing and selling crops, Open Grounds would accept payment from an entity other than Winslow personally. Further, although Open Grounds was aware that Winslow was having some financial difficulty when he did not pay his land rent on time and Open Grounds issued a notice of default, there is at least a genuine issue of material fact as to whether such knowledge could impute to Open Grounds the knowledge that the debtor, Tanglewood, intended to defraud an entity to which it was indebted. Finally, Open Grounds had a lien on Winslow's crops and could exercise that lien and sell Winslow's corn were Winslow not to make his rent payments. This too raises a genuine issue of material fact as to whether Open Grounds' acceptance of the rent payments from third parties is evidence that it turned a blind eye to what it knew to be practices which violate a reasonably commercial standard. For these reasons, entry of summary judgment on Open Grounds' good faith defense was inappropriate.

## CONCLUSION

Accordingly, it is for these reasons that the decision of the bankruptcy court entered on June 5, 2014, granting summary judgment in favor of the trustee is hereby REVERSED. The matter is REMANDED to the bankruptcy court for further proceedings consistent with the foregoing.

SO ORDERED, this 24 day of April, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE